# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# BIRMINGHAM DIVISION

| | | |
|---|---|---|
| **RANDY DEWAYNE PITTMAN;** | § | |
| Plaintiff(s) / Petitioner(s), | § | **Cause Action Number:** |
| v. | § | |
| **UNITED STATES DEPARTMENT OF JUSTICE; FEDERAL BUREAU OF PRISONS;** | § | **2:20-mc-2079-CLM** |
| | § | **Birmingham Case Number** |
| Defendant(s) / Respondent(s). | § | |

## EMERGENCY MOTION TO EXPUNGE INCIDENT REPORT

**COMES NOW,** your **Plaintiff, RANDY DEWAYNE PITTMAN** and represents unto this Honorable Court as follows, to-wit:

01. That this Honorable Court has jurisdiction as the **Plaintiff, RANDY DEWAYNE PITTMAN** (hereafter "Mr. Pittman"), is a resident of the State of Alabama, has been a resident of the State of Alabama and has no intentions of leaving the State of Alabama in the future.

02. That this Honorable Court has jurisdiction as the **Defendant(s), UNITED STATES DEPARTMENT OF JUSTICE** (hereafter "DOJ"), and the **FEDERAL BUREAU OF PRISONS** (hereafter "BOP"), are both federal agencies and this cause has been ongoing since on or about December 03, 2020.

03. That this entire case revolves around Re: Incident Report Number: 3198778 – Regional Appeal Number: 970520-R1 (Southeast Region – Federal Bureau of Prisons).

04. That Mr. Pittman was housed at the Federal Correctional Complex (hereafter "FCC") in Coleman, Florida, while incarcerated in the BOP.

05. That there is a total of five (5) prisons at the FCC.

06. That on or about November 01, 2018 Mr. Pittman was transferred from a high security prison to a medium security prison at the FCC.

07. That upon arrival, Mr. Pittman was immediately assigned to a two- (2) man cell.

08. That there was an altercation with the guards at the prison when it was determined that inmate Christopher James Gill – Reg. No.: 62481-081 (hereafter "Gill") was "out of bounds" and was actually in the cell that Mr. Pittman had been assigned.

09. That inmate Gill was furious that he was forced to move out of the two- (2) man cell and into another cell that housed three (3) inmates at a time.

10. That, for the following weeks, inmate Gill refused to move his property out of the cell, even though Mr. Pittman had gone to Corrections Officer Santiago and Corrections Counselor Santiago and explained to each of them that inmate Gill had his property inside Mr. Pittman's cell, refused to remove the property and continued to come in and out of the cell as if he still lived inside the cell.

11. That on or about December 03, 2018 Mr. Pittman was using the restroom inside his cell when the officer walked to the door and opened the door.

12. That the officer told Mr. Pittman not to flush the toilet when he was finished.

13. That the officer told Mr. Pittman he was going to search the cell and he needed to tell him if there was anything inside the cell that he needed to know about.

14. That Mr. Pittman explained that he was scheduled to go to a residential re-entry center (hereafter "RRC") in just a few weeks and had only been at this institution for approximately a month and had absolutely no reason to have any contraband.

15. That the housing unit officer who searched the cell walked directly to the location of the "weapon" that was found.

16. That everyone in the housing unit, including the officer who found it, knew it was placed there by inmate Gill as a retaliatory effort to get the Corrections Counselor to place him back inside the cell.

17. That Mr. Pittman and his cell-mate, Ernest Holloway, were both taken to the Special Housing Unit (hereafter "SHU") because a homemade weapon had been found inside the cell.

18. That anytime a one-hundred series incident report is written, both inmates are required to sit in the SHU until they see the DHO.

19. That if one (1) of the inmates claims the contraband, the other inmate is released and faces no sanctions.

20. That in this case, Mr. Pittman went before Discipline Hearing Officer (hereafter "DHO") Aaron Rich first.
21. That Mr. Pittman vehemently denied having any knowledge of the weapon or device that was found inside the cell.
22. That Mr. Pittman was ultimately found to be guilty of the infraction.
23. That this Honorable Court can review DHO Aaron Rich's record and clearly see that for any one-hundred (100) series incident report, DHO Aaron Rich always forfeits forty-one (41) days good conduct time as part of his sanctions.
24. That this Honorable Court can review DHO Aaron Rich's record and clearly see that for any one-hundred (100) series incident report, DHO Aaron Rich always suspends numerous privileges for a minimum of one (1) year for this type of incident report.
25. That the record will reveal that Mr. Pittman was disallowed only fourteen (14) days good conduct time and faced no loss of privilege sanction.
26. That Mr. Pittman's cell-mate, Ernest Holloway, did not even see DHO Aaron Rich and was immediately released to general population.
27. That this is not consistent with the policy of the Federal Bureau of Prisons' Program Statement because had Mr. Pittman accepted responsibility, then his cell-mate, Ernest Holloway, would have been excused from the offense but since Mr. Pittman denied all knowledge of the offense, his cell-mate, Ernest Holloway, was just as responsible as he was since the homemade weapon was found in a "common area" of the cell.
28. That Mr. Pittman was in the SHU from December 03, 2018 until May 01, 2019.
29. That Mr. Pittman discharged from the BOP on May 24, 2019.
30. That during the time that Mr. Pittman was in the SHU at FCI Coleman, Mr. Pittman appealed the DHO's decision.
31. That literally 4 (4) days prior to discharge, Mr. Pittman seen DHO Aaron Rich walking on the compound.
32. That Mr. Pittman requested to speak with DHO Aaron Rich and was afforded the opportunity to do so.
33. That Mr. Pittman advised DHO Aaron Rich that his appeal was granted and the case was remanded to the institution for rehearing.

34. That Mr. Pittman told DHO Aaron Rich that he was leaving "this Friday" and would like to have the one-hundred (100) series incident report expunged from his record because the DHO and everyone involved knew that Mr. Pittman had nothing to do with the homemade weapon.
35. That DHO Aaron Rich give Mr. Pittman a verbal promise that when the "rehearing" packet came across his desk he would expunge the incident report because at that point it would make no difference because Mr. Pittman would have gone home by then.
36. That a one-hundred (100) series incident report remains on an inmate's personal profile for ten (10) years and drastically increases his or her custody level.
37. That if Mr. Pittman were to find himself back in the prison system in the next eight (8) years, the incident report and sanctions that came with the incident report would remain in full effect, and could possibly increase his custody level unnecessarily.
38. That after Mr. Pittman was discharged from federal prison, Mr. Pittman wrote an email to DHO Aaron Rich and his supervisor (in Atlanta, Georgia) whose first name is believed to be Michael but Mr. Pittman cannot be certain of that but his email is mhicks@bop.gov.
39. That this Honorable Court may see a copy of the electronic mail message sent to the prison officials simply asking for DHO Aaron Rich to do what he said he would do and expunge the incident report and the issue would be dead.
40. That Mr. Pittman has waited long enough and the record is very clear in that DHO Aaron Rich is not going to do what he said nor is his supervisor going to do what was asked of him, so Mr. Pittman is now coming to the United States District Court to seek relief for the wrongdoings of the BOP.
41. That Mr. Pittman has already served all sanctions imposed by the DHO.
42. That Mr. Pittman has already served all the good conduct time he lost due to the offense.
43. That all Mr. Pittman wants is for the record to be clear in that he did not possess any weapon or dangerous instrument at any time during his incarceration.
44. That Mr. Pittman is asking this Honorable Court for nothing more than to do what is right and clear his name.

**WHEREFORE,** your **Plaintiff, RANDY DEWAYNE PITTMAN**, prays unto this Honorable Court as follows:

a. That this Honorable Court grant this motion.

b. That this Honorable Court see this case for what it is and base the decision on facts and not personal feelings and order the BOP to expunge this matter from the **Plaintiff's, RANDY DEWAYNE PITTMAN,** record permanently.

c. That this Honorable Court order the BOP to comply with the policies set forth in the BOP's Program Statement and afford Mr. Pittman the "rehearing" he was entitled to when he won his appeal at the Regional Level.

d. That since DHO Aaron Rich did not afford Mr. Pittman a "rehearing" while he was still in custody (because Mr. Pittman obtained a copy showing a rehearing had been ordered four (4) days prior to his release), and the fact that DHO Aaron Rich verbally agreed that "if" the rehearing packet came back to him, he was just going to expunge the incident report because Mr. Pittman had already served all the time in the Special Housing Unit and served all the loss of privileges that were imposed.

e. That this Honorable Court order the BOP to do what DHO Aaron Rich had verbally committed to and expunge the incident report.

f. For further and general relief that this Honorable Court or jury may deem just, proper and equitable.

**Respectfully submitted,** this the 28th day of December in the year of the Lord 2020.

By: _____

**RANDY DEWAYNE PITTMAN**
**Pro se**
917 Church Road
Fyffe, Alabama 35971
randy@randypittman.com

## CERTIFICATE OF SERVICE

      I swear/affirm/declare/certify that a true and correct copy of the foregoing has been served on the Plaintiff. The foregoing has been served hand-delivery to the following recipient at the following address:

**Birmingham Office**
1801 4th Avenue, North
Birmingham, Alabama 35203
(205) 244-2001

The foregoing was hand-delivered on December 28, 2020 at the aforementioned address.

By: _____
**RANDY DEWAYNE PITTMAN**
**Pro se**
917 Church Road
Fyffe, Alabama 35971
randy@randypittman.com